IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER BROGAN,** | : | **CIVIL ACTION** |
| on behalf of himself and all others | : | |
| similarly situated, | : | |
|     *Plaintiff,* | : | |
| v. | : | No. 17-5628 |
| | : | |
| **FRED BEANS MOTORS** | : | |
| **OF DOYLESTOWN, INC.,** | : | |
|     *Defendant.* | : | |

# MEMORANDUM

## I.   Introduction

Plaintiff Christopher Brogan ("Plaintiff"), brought this action on behalf of himself and other similarly situated vehicle purchasers against Fred Beans Chevrolet, Inc. ("Defendant") alleging breach of contract, breach of implied covenant of good faith and fair dealing, and violations of the Pennsylvania Motor Vehicle Sales Finance, 12 Pa. C.S.A. § 6201, *et seq.* (the "MVSF"), the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.* ("UTPCPL"), and the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA").

Plaintiff moved to certify the proposed classes and Defendant moved for summary judgment on October 7, 2019. ECF Nos. 72 & 73. The Court granted Defendant's Motion for Summary Judgment on all counts of the Second Amended Complaint on April 3, 2020, and thus, the Court did not issue a ruling on

1

Plaintiff's Motion for Class Certification.  ECF No. 95.  Before the Court now is Defendant's Motion for Attorneys' Fees and Costs filed on April 17, 2020.  ECF No. 96.

## II.     Background

Discovery disputes between the parties arose at the outset of this matter and continued throughout the entirety of the discovery process.  At bottom, Defendant's Motion for Attorneys' Fees and Costs seems to focus nearly entirely on the cost of producing the "deal jackets for all vehicle purchases during the five-year class period."  ECF No. 96-2 at 3.  Accordingly, the Court will focus on the discovery disputes related to that issue.

The first issue arose prior to the Rule 16 conference:  Defendant represented to the Court that it wanted to bifurcate the fact and class certification discovery processes, which Plaintiff opposed.  During the Rule 16 conference, held on December 14, 2018, Defendant agreed not to bifurcate the individual fact discovery from the class discovery and in turn, Plaintiff agreed to limit the discovery burden by asking Defendant "at the early stages [to produce] some samples of dealer jackets for different customers or time periods."  ECF No. 35 at 9 ("And with that agreement between Mr. Kim and myself that resolves our concerns with regard to bifurcation and I would accept Mr. Kim's recommendation that we proceed with discovery on both fact issues and

certification issues simultaneously.").

> During that conference, Plaintiff's theory of the case was made very clear:
>
> THE COURT: . . . And then -- so basically your claim is, I have a deal, I made this deal, I go home and I see that they're making more deals on my behalf. Not only are they more making deals on my behalf, but they're also, as a result of making more deals on my behalf having my credit checked. Is that essentially your case?
>
> MR. KIM: That's a portion of the case, Your Honor, and that's a very good summary of it. The only things I would add that is while this is going on, not only are they trying to create or do more transactions, the client or the individual or the consumer or people in the putative classes are going home with cars and many times what also happens during that time is these unpaid balances on their trade-ins when trade-ins are involved are not getting paid off.
>
> So not only is there credit harm occurring --
>
> THE COURT: They go home thinking the car's paid off, they're done, and it's not paid off because they're still shopping the sale of the – they're still shopping the clients.
>
> MR. KIM: Unbeknownst to the consumer the allegation is they're still shopping the deal around and they're shopping the deal around to keep on pulling the credit to see what the best deals the car dealership can really get.
>
> THE COURT: So in other words, if they can get a better financing rate, they're taking advantage of it, the dealership is.
>
> MR. KIM: Correct, Your Honor. Whether or not --
>
> THE COURT: And they're holding off of the payment on the car.
>
> MR. KIM: Correct, Your Honor, because they're trying to find their best quote/unquote brokerage fee from the deal, just immediately transferring the financing out.

ECF No. 35 at 9-10.  Defendant's defense to Plaintiff's claims was made equally

clear at that conference:

> MR. CHWASTYK: Your Honor, I think that discovery will establish that the circumstances of Mr. Brogan's purchase involving the multiple retail installment contracts and multiple credit checks are an individualized circumstance and not a common practice of the dealership.
>
> So as to Mr. Brogan's claims, I don't know whether there's legal foundation for Mr. Kim's arguments, but the facts may be what they are as to Mr. Brogan. But I don't believe that discovery will bear out that that's any kind of a common practice of the defendant.
>
> THE COURT: And what do you base that on?
>
> MR. CHWASTYK: Conversations with the sales managers and my client.

ECF No. 35 at 10-11.

On February 4, 2019, Plaintiff filed a Motion to Compel Discovery Against Defendant Fred Beans Chevrolet, Inc. (ECF No. 29). The Court held a hearing on that motion on February 14, 2019, during which Defendant told the Court that Plaintiff no longer requested a representative sample of deal jackets, but instead requested production of all of the deal jackets during the relevant class period and that Defendant was working to comply with that request on a "rolling basis as soon as possible." ECF No. 39 at 18-19. Notably, Defendant did not ask the Court then to bar Plaintiff from seeking discovery of all of the deal jackets, nor was the issue raised as to cost sharing. However, in an effort to try to narrow discovery, the Court directed that Plaintiff was to depose Defendant's corporate designees in order to determine the specific process that took place during

Plaintiff's transaction with Defendant and whether that transaction was conducted according to Defendant's regular policies and procedures. ECF No. 39 at 27.

In accordance with the Court's directive, Plaintiff deposed six different corporate designees for Defendant on February 21, 2019. ECF No. 96-2 at 7. The Court held a follow-up status conference on March 14, 2019, ECF No. 38, during which Plaintiff reported that the only outstanding discovery issues related to negotiation of the protective order, which were resolved during that conference. Accordingly, the Court denied Plaintiff's Motion to Compel as moot. ECF No. 43.

On March 22, 2019, Defendant began a rolling production of the deal jackets serving Plaintiff's counsel with 541 deal jackets for sales transacted in 2018.[1] ECF No. 96-1 at 39-41. In its cover letter to that production, Defendant

---

[1] Defendant asserts that those "deal jackets were maintained in paper format, and so Fred Beans was required to pull each deal jacket so that its counsel could review the files, scan the responsive documents contained in those files, and produce those documents electronically to Plaintiff's counsel." ECF No. 96-2 at 5. Indeed, Defendant states that "Fred Beans's employees sorted and collected deal jackets dated from December 2012 to December 2018 for scanning and review by its counsel" and that in order to produce them on time, "Fred Beans had multiple employees work overtime in January and February 2019 to collect potentially responsive documents . . . ." Id. at 5. Moreover, "Fred Beans's counsel engaged e-discovery vendor KLDiscovery to collect the paper copies of the deal jackets and scan those files into an electronic format for review" and that "Fred Beans's counsel also engaged e-discovery vendor Logikcull to provide cloud storage for the scanned documents and a document review platform." Id. "To timely produce within the discovery period the documents demanded by Plaintiff's counsel, Fred Beans's counsel enlisted from their firm eight associates,

notified Plaintiff that "Fred Beans has spent approximately $160,000 on Class Discovery for this matter" and that "[c]ompleting a review of all of the deal jackets through the putative class period's commencement in 2012 will require Beans to incur substantial additional expenses." *Id*. at 7-8. Instead of demanding cost-sharing of the remaining rolling productions however, Defendant stated that "[i]n light of the limited size of the putative alleged Credit Inquiry and Multiple RISC classes, Fred Beans hereby demands that Plaintiffs withdraw these claims." *Id*. at 8.[2] At the conclusion of the letter, Defendant stated that "Fred Beans reserves all rights to seek to recover these undue costs from Plaintiff and/or Plaintiff's counsel pursuant to *Boeynaems v. LA Fitness Int'l*, 285 F.R.D. 341 (E.D. Pa. 2012)" and to "[p]lease let us know if you are willing to withdraw the alleged Credit Inquiry and Multiple RISC classes or to discuss some other way to further limit class discovery to contain the costs of the same." ECF No. 96-1 at 40-41.

---

two members, two paralegals, and two litigation support managers to review the documents and complete production of documents to Plaintiff's counsel on a rolling basis." *Id*. at 7.

[2] It is likely that Defendant did not demand that Plaintiff withdraw his claims as to the other two classes (the "False Finance Charge Class" and the "Dealer Fee Class") because identifying potential class members for both of those classes was not a timely nor work-intensive feat as Defendant did not dispute at that time that Defendant calculated the finance charges in a similar manner for nearly all customers during the class period and Defendant charged nearly all of its customers the maximum documentation fee permitted by law during the class period.

Defendant asserts that Plaintiff continued to demand the production of the remaining deal jackets for the relevant class period, so Defendant made subsequent productions of deal jackets on six more occasions: on March 27, 2019; April 4, 2019; April 8, 2019; April 11, 2019; April 15, 2019; and April 23, 2019. ECF No. 96-1 at 13-15.  In total, Fred Beans produced to Plaintiff more than 61,912 pages of documents including deal jackets for at least 2,547 customers. ECF 96-2 at 9.

Defendant now seeks this Court to order Plaintiff and/or Plaintiff's counsel to reimburse Defendant for $350,000 in legal fees incurred to produce that discovery, $18,954.91 in costs for scanning the deal jackets by KLDiscovery, and $46,549.18 in costs for document storage in Logikcull.  ECF No. 96-2 at 9.

## III.   Discussion

Defendant filed a Motion for Attorneys' Fees and Costs (ECF No. 96) asserting that "[d]espite having had no evidence to support his assertions that his individual claims should be litigated on a class[-]wide basis, Plaintiff and his counsel issued putative class-wide discovery requests requiring Fred Beans to spend more than $350,000 in attorneys' fees plus costs to gather, sort, scan, upload, review, and produce several thousand customer files (the "Class Discovery")."  ECF No. 96-2 at 1.  Thus, Defendant argues, "[p]ursuant to the standard set forth in *Boeynaems v. LA Fitness Int'l*, 285 F.R.D. 341 (E.D. Pa.

2012), Plaintiff and his counsel, having represented the merits of the claims they sought to pursue on behalf of several classes of individuals, should bear the costs of their attempt to establish class-wide claims." *Id*. Specifically, Defendant seeks "the reasonable attorneys' fees, expenses, and costs incurred by Defendant in responding to Plaintiff's Class Discovery requests be shifted to Plaintiff and his counsel under the standard set forth in *Boeynaems*." *Id*. at 11.

In its opening brief, Defendant cites to both Rule 54(d) and Rule 26(c)(1)(b) of the Federal Rules of Civil Procedure as bases for granting the requested relief. Rule 54(d) provides:

> (1) Costs Other Than Attorney's Fees. Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.
>
> (2) Attorney's Fees.
>
>> (A) Claim to Be by Motion. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.
>>
>> (B) Timing and Contents of the Motion. Unless a statute or a court order provides otherwise, the motion must:
>>
>>> (i) be filed no later than 14 days after the entry of judgment;
>>>
>>> (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;

> (iii) state the amount sought or provide a fair estimate of it; and
>
> (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Fed. R. Civ. P. 54(d).

Rule 26(c)(1)(B) provides, in pertinent part:

(c) Protective Orders.

> (1) In General.  A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken.  The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
>> . . .
>>
>> (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery . . . .

Fed. R. Civ. P. 26(c)(1)(B).

Plaintiffs argue in response that not only is *Boeynaems* inapplicable to the case at hand, it also provides no basis for an allocation of attorney's fees as that case only discusses the possibility of shifting costs, not attorney's fees.  ECF No. 97.  Plaintiff further asserts that Defendant's request is also untimely, as

Defendant should have requested allocation of costs from the Court by way of a motion for a protective order before the costs were incurred.

In its reply, Defendant argues that the express language of Rule 26(c) is not limited to costs; rather, the rule "provides broadly for the 'allocation of expenses, for the disclosure of discovery'" and that federal courts have awarded parties' attorney's fees incurred while responding to discovery requests. ECF No. 100. However, Defendant then goes on to seemingly shift its argument asserting that Plaintiff should bear the costs of reviewing and producing the deal jackets because "identifying the members of the putative classes was always Plaintiff's expense to bear . . . ." ECF No. 100 at 3.

The Court will first begin by addressing Defendant's initial argument that costs of discovery, including attorney's fees, should be allocated to Plaintiff based on the standard provided in *Boeynaems*. In *Boeynaems*, the plaintiffs signed contracts to become members of a health/fitness organization and alleged that they thereafter encountered deception and breaches concerning their desire to terminate their membership. *Boeynaems*, 285 F.R.D. at 332. Throughout the discovery process in that case, the parties were often in dispute as to the bounds of discovery, frequently involving the district court in resolving those disputes.

Those disputes culminated in the plaintiffs filing a motion largely to compel the defendant to produce voluminous paper documents dealing with membership

issues that were being stored at an off-site location. In response to the motion to compel, the defendant asked the court to order that the costs of producing the requested documents be borne by the plaintiffs. It should be noted that the court had already ruled that the plaintiffs would not be required to pay for defense counsel to review those documents prior to production in part because it was highly unlikely that privileged materials would be contained in those documents and that the plaintiffs agreed to return any privileged documents produced. *Boeynaems*, 285 F.R.D. at 339.

In considering the parties' requests, the *Boeynaems* court took specific notice of the significant discovery already provided by the defendant. *Id*. ("Defendant asserts that it has reviewed (1) over 500,000 Member Notes from five states for 30 months looking for certain terms, (2) over 1,000 boxes of cancellation requests, of which Plaintiffs reviewed only 70 boxes, (3) over 19,000 pages of documents, and (4) an electronic search of over 32,000 E-mails, maintained by five custodians. Defendant contends that relatively few tidbits of relevant information have been found as a result of this very extensive and expensive search.").

Ultimately, the *Boeynaems* court held that "where (1) class certification is pending, and (2) the plaintiffs have asked for very extensive discovery, compliance with which will be very expensive, that absent compelling equitable

11

circumstances to the contrary, the plaintiffs should pay for the discovery they seek." *Boeynaems*, 285 F.R.D. at 341. The court went on to say that "[i]f the plaintiffs have confidence in their contention that the Court should certify the class, then the plaintiffs should have no objection to making an investment. Where the burden of discovery expense is almost entirely on the defendant, principally because the plaintiffs seek class certification, then the plaintiffs should share the costs." *Id*.

The facts and circumstances of the *Boeynaems* case are wholly different from the facts and circumstances presented in the case at hand. Unlike in this case, the defendant in *Boeynaems* brought the issue of allocating costs to the court's attention *prior* to undertaking the expenses of producing *additional* discovery requested by the plaintiffs *after* significant productions were already made *but prior* to the class determination stage. Though the court's conclusion seems broad in its phrasing, as Defendant seemingly hangs its hat on, the reasoning articulated in support of that conclusion is exceedingly fact oriented. And because the facts of the *Boeynaems* case are very different from the facts of this case, the Court does not find *Boeynaems* instructive in the case at hand.

Furthermore, it is important to note that the *Boeynaems* court ordered cost allocation *only as to future discovery production costs*, which is significant because it allowed the plaintiffs to control the accrual of those additional

production costs by way of making informed decisions about their future demands for production. *Id*. at 341-342 ("The Court is persuaded, it appearing that Defendant has borne all of the costs of complying with Plaintiffs' discovery to date, that the cost burdens must now shift to Plaintiffs, if Plaintiffs believe that they need additional discovery. In other words, given the large amount of information Defendant has already provided, Plaintiffs need to assess the value of additional discovery for their class action motion. If Plaintiffs conclude that additional discovery is not only relevant, but important to proving that a class should be certified, then Plaintiffs should pay for that additional discovery from this date forward, at least until the class action determination is made.").

Thus, the Court finds Defendant's assertion that it is entitled to the costs, including attorney's fees, of reviewing and producing all of the documents turned over to Plaintiff in this matter well after those costs were incurred based on the standard set forth in *Boeynaems* unpersuasive. Contrarily, in the spirit of *Boeynaems* and as Plaintiff argues, Defendant could have filed a motion for a protective order and requested relief under Rule 26 or requested cost allocation in its response to Plaintiff's motion to compel like the defendant in *Boeynaems* did prior to allegedly incurring $350,000 in attorneys' fees and approximately $65,000 in related expenses. Indeed, Defendant had ample opportunity to request a protective order from the Court either by motion or during the discovery

13

conferences held in both February and March of 2019. But, Defendant did not file such a motion and thus, it is not that Defendant's timing is fatal to its request, but instead that the considerations taken into account by the *Boeynaems* court and the decision's logical foundation are made inapplicable to the case at hand by the current posture of this case. Indeed, the costs have already been incurred, summary judgment has been granted, and a class determination was never made.

Furthermore, it is noteworthy that Defendant was in an ideal position to file such a motion with the Court. Defendant's defense to this case since the Rule 16 conference had been that regardless of whether there was merit to Plaintiff's individual claims against Defendant, the class claims were meritless because the circumstances of Plaintiff's transaction were an outlier in Defendant's normal course of business. It follows then that Defendant could have deposed the necessary corporate designees to testify to as much, which could have been submitted to the Court in support of a motion for protective order. Thus, though no binding case law necessarily restricts this Court from allocating the requested costs at this time, Defendant's argument and the other supplementary case law cited to in its briefing provide no persuasive basis for doing so.

Turning now to Defendant's contention that Plaintiff should retroactively bear Defendant's costs of discovery and attorney's fees because under Rule 23 Plaintiff bears the burden of identifying and notifying class members, the Court

finds this argument problematic as well.³  Contrary to Defendant's assertion, Plaintiff's document requests related to the deal jackets do not amount to a request for Defendant to identify class members in the sense of Rule 23 identification and notification.  It certainly cannot be Defendant's contention that every one of the deal jackets produced to Plaintiffs represented verifiable members of the proposed classes.  In fact, Defendant explicitly argued against that very contention in its Motion in Opposition to Plaintiff's Motion for Class Certification.  *See* ECF No. 80 at p. 10, n3.

Moreover, Defendant's reliance on *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) to support its argument here is misplaced.  Indeed, the circumstances in *Oppenheimer* were very different from the circumstances presented here.  *Oppenheimer* dealt with the allocation of costs of identifying class members at the class notification stage well after the class determination phase under Rule 23 had concluded, as was the case in many of the other cases cited to by Defendant.

Thus, the Court finds both of Defendant's purported foundations for the award of attorney's fees and allocation of discovery costs in this matter unpersuasive.

---

³ For the sake of thoroughness in considering the parties' many arguments regarding this cost allocation issue, the Court will set aside the fact that this particular argument was raised for the first time in Defendant's reply brief as Plaintiff responded to the argument in a surreply brief.

## IV.   Conclusion

For the foregoing reasons, Defendant's Motion for Attorneys' Fees and Costs (ECF No. 96) will be denied.  An appropriate Order follows.

DATED:  **August 25, 2020**                              BY THE COURT:

                                                                          /s/ Chad F. Kenney
                                                                          _____
                                                                          CHAD F. KENNEY, J.